RATTET PLLC
Attorneys for the Debtor
202 Mamaroneck Avenue
White Plains, New York 10601
(914) 381-7400

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

175 LENOX RESTAURANT, LLC　　　　　　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　Case No. 11-12490 (REG)


　　　　　　　　　　　　　　Debtor.
-----------------------------------------------------------------X


**DEBTOR'S MOTION SEEKING ENTRY OF: (I) SALE PROCEDURES
ORDER (A) APPROVING BIDDING PROCEDURES, (B) APPROVING
THE FORM AND MANNER OF NOTICE, AND (C) SCHEDULING AN
AUCTION AND SALE HEARING; (II) SALE APPROVAL ORDER (A)
AUTHORIZING ASSUMPTION AND ASSIGNMENT OF THE
DEBTOR'S NONRESIDENTIAL REAL PROPERTY LEASE; (B)
AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS
INTERESTS AND ENCUMBERANCES, (C) GRANTING THE
SUCCESSFUL BIDDER GOOD FAITH STATUS, (D) WAIVING THE
FOURTEEN DAY STAY OF SALE ORDER, AND (E) GRANTING
RELATED RELIEF**


**TO:　　THE HONORABLE MICHAEL E. WILES,
　　　　UNITED STATES BANKRUPTCY JUDGE:**

　　　175 Lenox Restaurant LLC, the above captioned debtor and debtor-in-possession (the

"Debtor"), by its attorneys, Rattet PLLC  hereby files this motion ("Motion") pursuant to §§105(a),

363(b), (f) and (m), 365, 503, 507, 1146(a) of title 11 of the United States Code, 11 U.S.C. §§ 101,

et seq. (the "Bankruptcy Code"), Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (g), 6006(a) and (c),

9006, 9007, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), for entry of three Orders:

- **Sale Procedures Order**: (i) establishing bidding procedures to govern the sale (the "Sale") of certain the Debtor's assets (the "Purchased Assets" or "Assets", as further defined in the Asset Purchase Agreement (the "APA")(between the Debtor and El Encanto de Lola 2, LLC ("Purchaser 1"), and between the Debtor and Mr. Moutaz Ali or Designee ("Purchaser 2"); (ii) scheduling an auction to sell the Assets, subject to higher and better bids (the "Auction"); (iii) scheduling a hearing to approve the Sale of the Assets in accordance with the Auction (the "Sale Hearing"); and (v) approving the form and manner of notice of the Sale, the Bidding Procedures, the Auction and the Sale Hearing. The purchase offers are respectively annexed hereto as Exhibits "1" and "2".

- **Sale Approval Order**: (i) assuming and assigning the Debtor's non-residential real property lease; (ii) approving the Sale of the Debtor's Assets in accordance with the results of the Auction to the highest bidder (the "Successful Bidder"); (iii) granting the Successful Bidder good faith status; and (iii) waiving the fourteen day stay of the Order.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This proceeding has been initiated pursuant to Bankruptcy Code §§105(a), 363(b), (f) and (m), and 365 and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), and (f), and 6006(a) and (c)

## BACKGROUND

4.     On May 15, 2017, (the "<u>Filing Date</u>"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.[1]

5.     Thereafter the Debtor's proceeding was referred to your Honor for administration under the Bankruptcy Code.

6.     The Debtor has continued as a debtor-in-possession pursuant to §1107 and 1108 of the Bankruptcy Code.

7.     No trustee, examiner or statutory committee has been appointed

8.     The Debtor is a restaurant located at 175 Lenox Avenue, New York, NY (the "<u>Premises</u>").

9.     The Debtor previously entered into a lease (the "<u>Lease</u>") of the Premises from Lenox NY, LLC (the "<u>Landlord</u>").

10.    The Debtor had numerous difficulties both with the Landlord and the neighborhood.

11.    The Debtor's efforts to sell the Premises began almost immediately.

12.    The Debtor continued efforts to sell the Premises in the Chapter 11 proceeding.

### The Asset Purchase Agreements

13.    The Debtor has obtained a purchase offer from Purchaser No. 1 (Exhibit "1").

14.    The Debtor progressed almost to the point of submitting the contract of sale with Purchaser No. 1, whose offer is in the amount of $175,000 for the assets of the Debtor.

---

[1] At the time 171 Lenox Restaurant, LLC also filed a voluntary petition for reorganization. Th Debtor in that proceeding rejected its lease and the Debtor will duly seek dismissal.

15.     Then Purchaser No. 2 made an offer for the equity interests of the Debtor, in the amount of $240,000, subject to payment of a brokerage commission in the amount of 10% of said price. (Exhibit "2").

## RELIEF REQUESTED AND BASIS FOR RELIEF

16.     By this motion, the Debtor is seeking entry of two orders, the Sale Procedures Order, substantially in the form annexed hereto as **Exhibit "3"** and the Sale Approval Order, substantially in the form annexed hereto as **Exhibit "4".**

**I.      Sale Procedures Order**

**A.      The Proposed Bidding Procedures**

17.     The Debtor recognizes that the two offers are not completely comparable.

18.     The Debtor seeks the right to offer both for bidding and will select, from the bids, what it considers to be the highest and best offer, based upon which offer will net the Estate a greater return.

19.     In order to ensure that the highest and best price is received for the Assets, and/or the Debtor, the Debtor has established the proposed Bidding Procedures to govern the submission of competing bids at an Auction. Accordingly, the Debtor seeks this Court's approval of the Bidding Procedures set forth in **Exhibit "5"** and incorporated herein in their entirety.

20.     All bids submitted for the purchase of the Debtor's Assets shall remain open, and all deposits held in the attorney escrow account of the Debtor's counsel until the sale of the Debtor's Assets to the Successful Bidder is consummated.  In the event that the Successful Bidder is unable to consummate on the Sale of the Debtor's Assets, the next highest and/or best bidder (the "Backup Bidder") will then be required to consummate on the Sale of the Debtor's

4

assets. However, if the Purchaser is the Backup Bidder, the Purchaser's bid shall remain open for 7 days after the Sale Hearing, unless otherwise agreed between the Debtor and the Purchaser.

21.     A copy of the proposed Order scheduling this Hearing is annexed hereto as Exhibit "6".

**B.      Broker and Marketing of the Debtor's Assets**

22.     The bid of Purchaser No. 1 has no broker.

23.     The bid of Purchaser No. 2 has a broker, Great American Brokerage.

24.     The commission on Purchaser No. 2 is 10% of the purchase price.

**C.      The Proposed Bidding Procedures Are Adequate and Should Be Approved**

25.     In determining whether bidding procedures governing the sale of a Debtor's assets are adequate, Court have consistently deferred to the Debtor's business judgment for their specific industry. See, In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992)(Court held that where overbid procedures are negotiated by the chapter 11 debtor, the business judgment rule applies and said procedures are "presumptively valid").

26.     Furthermore, the purpose of bidding procedures is to solicit the highest and best bid, which would in turn best benefit the creditors. In re Financial News Network Inc., 980 F.2d 165 (2nd. Cir. 1992)(Bankruptcy Court's principal responsibility relating to bidding procedures that govern sale is to secure best possible bid for benefit of creditors.)

27.     Thus, courts deem appropriate those bidding procedures intended to maximize the value of the Debtor's estate. See, e.g., Financial News, 980 F.2d at 170-71 (Bankruptcy court allowed bidder to supplement one of two bids for Chapter 11 Debtor's assets after bidding was closed since the revision was consistent with both rules by which particular Auction was being conducted and reasonable expectations of bidders.); Integrated Resources, 147 B.R. at 656-57

5

28.     The Debtor believes that the Bidding Procedures proposed will procure serious parties interested in acquiring the Debtor's Assets and will result in realizing the full value of the Debtor's Assets. The Debtor's Bidding Procedures are designed to facilitate a competitive bidding process in an expeditious manner. The Bidding Procedures will allow the Debtor to conduct the Auction in an open fashion that will encourage participation from those bidders that demonstrate they are financially capable to consummate the transaction.

29.     The Debtor believes, in its business judgment,  that the Bidding Procedures are adequate and will result in maximizing the value of its Assets and are therefore appropriate under the relevant standards governing auction proceedings.

**D.      The Proposed Form and Manner of Notice of Sale is Adequate**

30.     Bankruptcy Rule 2002(a) and (c) requires the Debtor to notify creditors of the proposed sale of the Assets, including the date, time and place of the Auction, terms of the Sale, and the deadline for filing any objections.

31.     The Debtor proposes to comply with these requirements by serving via first class mail within three (3) days of entry of the Sale Procedures Order copies of: (i) Sale Procedures Order, (ii) Bidding Procedures, and (iii) this Motion.

32.     The Debtor proposes to serve the following parties: (i) the Office of the U.S. Trustee, (ii) all taxing authorities, (iii) counsel to the Purchaser, (iv) all creditors, and (v) all potential buyers known by the Debtor.

33.     In addition, the Broker will publish the details of the Auction via email through his Database which the Debtor believes this will adequately advertise the Auction.

34.     The Debtor submits that the foregoing notice fully complies with the requirements set forth in Bankruptcy Rule 2002. Based upon the foregoing, the Debtor respectfully requests

that this Court approve the form and manner of the notice proposed above.

## II.     Sale Approval Order

### A.     The Court Should Allow the Debtor to Assume and Assign the Lease

35.     In relevant part, §365(a) of the Bankruptcy Code provides that the Debtor may assume the Lease so long as the arrears owed to the Landlord are cured.

36.     As the total consideration payable, in cash, under the APA, $200,000, well exceeds the disputed arrearages owed to the Landlord of approximately $150,000, the Debtor submits that the assumption of the Lease and its assignment through the Sale (discussed *infra.* and supra.) is warranted by the Bankruptcy Code.

### B.     This Court Should Approve the Sale of the Debtor's Assets to the Successful Bidder

37.     The Debtor does not know which of the offers it will proceed with.

38.     Following the Auction, the Debtor will seek this Court's approval of the sale of the Debtor, or alternatively the Debtor's Assets free and clear of all liens, claims and encumbrances to the bidder that submits the Successful Bidder.

39.      All of the sale proceeds will be received by the Debtor, with all liens, claims and encumbrances to attach to the proceeds in accordance with Section 363(f) of the Bankruptcy Code.

40.     Pursuant to Section 363 (b) and (f) of the Bankruptcy Code, the Debtor seek entry of an order authorizing the sale, assignment and transfer the Assets. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  §363 (f) of the Code states as follows:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

(1) applicable nonbankruptcy law permits sale of such property free and clear of "such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute;  or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

41.     The conditions set forth in 11 U.S.C. §363(f) are in the disjunctive, which means that only one of the tests must be met. The Debtor believe that the Purchase Price for the sale of the Assets in this manner is in the best interests of the estates and its creditors, for a variety of reasons, including the following: (i) the Debtor believes that an immediate sale of the Assets is in the best interests of creditors and the estate at large; (ii)  the Purchase Price is adequate and represents fair market value of the Assets to be sold; and (iii)  the sale proceeds will be used to fund a liquidating plan of reorganization.

42.     It is therefore submitted that Section 363(f) of the Bankruptcy Code is satisfied and an immediate sale of the Assets is in the best interests of creditors and the estate and will prevent unnecessary, irreparable harm to the creditors and the estate.

43.     In connection with this motion, the Debtor proposes to invite interested parties to make higher or better offers by way of conducting an Auction of the Debtor's Assets in contemplation of a Sale free and clear of all liens, claims and encumbrances, with all such liens, claims and encumbrances to attach to the Sale proceeds.

44.     The Debtor seeks authority to conduct the Auction free and clear of all liens with the liens to attach to the proceeds of sale (i.e., gross proceeds, less expenses) pursuant to §363(f) of the Bankruptcy Code. Since the Auction contemplated hereby is not in the ordinary course, its authorization requires notice and a hearing pursuant to Section 363(b) of the Bankruptcy Code. Auction sales are specifically authorized under the Bankruptcy Code and F.R.B.P. Rule 6004(f) provides that, "All sales not in ordinary course of business may be by private sale or public auction."

45.     The Debtor submits, however, that the sale of itself to Purchaser, in accord with the terms of the bid of Purchaser No. 2, will be the highest and best offer.

46.     Therefore, the Debtor request that the Court authorize and approve the Sale of the Debtor's Assets or the Debtor.

**C.     Estimated Distribution of Sale Proceeds Analysis**

47.     The Debtor's estate has or is anticipated to have, the following estimated liabilities:

| Creditor | Type of Claim | Est. Amount Owed As of 8/1/11 |
|---|---|---|
| US Trustee Fees (est.) | Administrative | $1500 |
| Chapter 11 Professional Fees (est.) | Administrative | $15,000 |
| Landlord's Arrearages (Disputed) | Administrative | $120,000 |
| Frandel Electric (secured claim) | Secured | $32,000 |
| M2 Squared (secured claim) | Secured | $50,127.74 |
| James Goldman | Administrative | $25,000 |
| 507(a)(8) Tax Claims | Priority | $29,000 |
| General Unsecured Claims | Unsecured | $25,000 |

48.     Purchaser No 1's offer of $175,000 for the Debtor's Assets is not sufficient to provide for a complete distribution to the Debtor's creditors. For there to be a distribution to

unsecured creditors would require additional higher bids to be obtained at the Auction in excess of $267.500.00.

49.     Purchaser No 2's offer would provide for a subsequent plan of reorganization, as the purchaser would be acquiring equity.

50.     Fees owed for United States Trustee Fees under 28 U.S.C. Section 1930 and statutory interest, if any, pursuant to 31 U.S.C. Section 3717, through the closing of the case shall be carved out from the Sale. Additionally, the Professionals reserve their rights to agreed claims under §506(c) of the Bankruptcy Code.

**D.     Granting the Successful Bidder Good Faith Status is Appropriate**

51.      Section 363(m) of the Bankruptcy Code provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease  under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

52.     The Debtor respectfully request that the Court enter an order granting Purchaser "good faith purchaser" status pursuant to Section 363(m) of the Bankruptcy Code.

53.     As set forth hereinabove, Purchaser No.1 has negotiated the APA in good faith and at arms length with the Debtor. The Purchaser is a third party unrelated to the Debtor, is not an "insider" of the Debtor within the meaning of Section 101(31) of the Bankruptcy Code, and is not controlled by, or acting on behalf of, and insider of the Debtor or the Debtor themselves. Furthermore, Purchaser has separate counsel who negotiated the terms of the APA with Debtor's counsel.

54.     Purchaser No. 2 is making an offer for the Debtor and would separately make an offer for the payment of the Debtor's creditors.

55.     Based upon the foregoing, the Debtor respectfully submit that Purchaser has taken part in the transaction contemplated hereby in a manner consistent with granting it "good faith purchaser" status, and the protections concomitant with such status.

**E.      The Fourteen Day Stay of the Order Should be Waived**

56.     Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

57.     The Debtor hereby requests that the Court, in its discretion, waive the fourteen-day stay imposed by Rule 6004(h).

58.     The Debtor suggests that good cause exists for such a waiver. A fourteen day stay of the Sale would cause the Debtor to incur an additional half month's rent arrearages.  This arrearage would need to be cured by the proceeds of the Sale which would hence diminish the distribution to the Debtor's creditors.

59.     For the foregoing reasons, the Debtor therefore requests that the Court waive the fourteen-day stay consistent with the provisions of Federal Rule of Bankruptcy Procedure 6004(h).


**E.      Escrow of the Alleged Cure Damages of the Landlord**

60.     The cure amount of approximately $120,000.00 owed to the Landlord should be escrowed pending the Debtor's fixing the cure amount due to the Landlord.

EXHIBIT "1"

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("Agreement") dated as of the ___ day of October 2017 (the "Effective Date") is between 175 Lenox Restaurant LLC, debtor-in-possession, with offices at 175 Lenox Avenue, New York, New York 10026 ("Seller") and El Encanto De Lola 2 LLC, with offices at 110 west 111 Street, Apt. 3, New York, NY 10026 ("Buyer").


## R E C I T A L S

1.    The Seller is engaged in the business of operating a restaurant and event venue (the "Business"), located at 175 Lenox Avenue, New York, New York 10026, currently known as Little Bamboo/~~Lo Bar~~; and

2.    On May 15, 2017, Seller filed a Chapter 11 petition for reorganization under 11 U.S.C. §101, et. seq., in the United States Bankruptcy Court, Southern District of New York (Case No. 17-11345 MEW); and

3.    Seller is a debtor and debtor-in-possession, and no trustee and/or examiner has been appointed in Seller's bankruptcy case; and

4.    The Seller wishes to sell to the Buyer, and the Buyer wishes to purchase from the Seller, subject to the approval of the Bankruptcy Court, substantially all of the assets of Seller used in connection with the Business, on the terms set forth herein.

NOW THEREFORE, the parties hereto agree as follows:


1.    PURCHASE AND SALE OF ASSETS; PURCHASE PRICE; EXCLUDED ASSETS

1.1.    Purchase of Assets. On the terms and subject to the conditions set forth herein, on the Closing Date, the Seller shall sell, transfer, convey, assign and deliver to Buyer, and Buyer shall purchase, acquire and accept, all of the properties and assets of every kind, wherever situated, owned, possessed or held by the Seller in the operation of the Business (other than the Excluded Assets, as hereinafter defined), utilized by the Seller in the operation of the Business (collectively, the "Assets"), free and clear of all liens, claims, charges, rights, security interests or encumbrances whatsoever (collectively, the "Liens"). Without limiting the generality of the foregoing, the Assets shall include the following:

(a)    All furniture, fixtures, leasehold improvements, glassware, flatware, dishes, linens, artwork (except the artwork specifically excluded in Section 1.2), kitchen equipment, and all other items on the Premises as of the Effective Date that Buyer deems necessary or desirable to operate the business as a restaurant, plus the beverage inventory as provided for in Section 6.10.

(b)  ~~All right, title~~ and interest of the Seller ~~(to the extent transferable) in its liquor~~ licenses, ~~outdoor café licenses.~~ Public Assembly permits and any other ~~permits, approvals and licenses relating to the conduct of its Business~~;

(c)  All right, title and interest of the Seller in its real estate lease (the "Premises Lease") for the premises known as 175 Lenox Avenue, New York, New York 10026 (the "Premises").

(d)

(e)  All of Seller's right, title and interest in and to its leases for any equipment specified in the Sale Order, _EXCEPT FOR THE AUTCHCHLOR DISH LEASE. THE M² LEASE IS BEING PAID AT CLOSING_

(f)  All telephone numbers used in the operation of the Business; and

(g)  All goodwill and other intangible assets, owned, used or held for use by the Seller in the operation of the Business.

1.2.  Excluded Assets.  Notwithstanding anything herein to the contrary, on the Closing Date, the Seller is not selling or assigning to the Buyer, and the Buyer is not purchasing or assuming from the Seller (i) cash; (ii) accounts receivable generated prior to the Closing Date; (iii) the security deposit for the Premises Lease ("Security Deposit"); (iv) any corporate minute books, stock ledgers and other corporate books and records of Seller; (v) all federal, state and local income tax refunds due to Seller; (vi) the existing Con Edison security deposit; (vii) existing claims under policies of insurance maintained by Seller; (viii) "Estate Causes of Action" as defined in Chapter 5 of Title 11, United States Code; (ix) the espresso machine ~~and coffee urns~~ on Premises; and (x) the Purchase Price.

1.3.  Purchase Price

(a)  The aggregate purchase price (the "Purchase Price") for the Assets shall be $175,000.

(b)  The Purchase Price shall be paid by the Buyer to the Seller  as follows:

> (i) $17,500 (the "Deposit") by check, subject to collection, upon the execution of this Agreement, to be held in escrow by Debtor's counsel, pursuant to the requirements of this Agreement, and (ii) $157,500 by bank check or wire transfer at Closing.

1.4.  Return of Deposit:  The Deposit shall be refunded to Buyer, and this Agreement shall be, absent further extension upon agreement by the parties, void, within five (5) business days of any of the following events:

> 1.  the Seller's failure to:

2

obtain the entry of the Sale Order, with terms as described in Schedule "A", within 45 days following the Effective Date of this Agreement;

2.    the parties' written agreement to terminate this Agreement; or

1.5.   <u>Allocation of Purchase Price</u>. The parties agree that the consideration for the sale of the Assets shall be allocated among the Assets as set forth in a Memorandum executed by both parties and delivered at Closing. The Seller and the Buyer acknowledge that the allocation of the Purchase Price to the Assets shall be arrived at based on their negotiations and shall be used by them for all purposes, including, but not limited to, federal, state and local tax and financial reporting purposes, and they shall take no position inconsistent therewith. On the Closing Date, the Buyer and the Seller shall execute Internal Revenue Form 8594 which form shall be binding on the Buyer and the Seller and be filed with the income tax returns of the Buyer and the Seller.

## 2.   LIABILITIES

2.1.   <u>Assumption of Liabilities</u>. Notwithstanding anything in this Agreement to the contrary, the Buyer shall, from and after the Closing Date, assume, pay, perform and discharge in due course, as and when due, only those liabilities and obligations of the Seller expressly assumed at the Closing, but excluding all other liabilities (collectively, the "Assumed Liabilities"). *THIS DEBTOR'S LEASE WITH LEHER W, LLC AND RENT OBLIGATIONS ARE ASSUMED AS OF 12/1/17.*

2.2.   <u>Excluded Liabilities</u>. Except for the Assumed Liabilities, the Buyer is not assuming any debts, obligations or liabilities of the Seller whatsoever, whether known or unknown, actual or contingent, matured or unmatured, currently existing or arising in the future, including, without limitation, the following (i) liabilities arising out of the relationship between the Seller and its employees which arise prior to Closing or which arise after the Closing Date as a result of the acts or omissions of the Seller, or any of its employees, officers, agents, directors, or invitees prior to the Closing Date, including, but not limited to, liabilities pursuant to any employment agreement (oral or written), liabilities for payroll, payroll withholding taxes, unfunded pension liabilities, liabilities under health and welfare plans, liabilities in connection with employment discrimination or sexual harassment, any amounts for accrued vacation and leave time, severance and employment termination liabilities, and any interest and penalties related to any of the foregoing, (ii) federal or state income Taxes (as defined below); (iii) tort liabilities, including, but not limited to, liabilities arising from the sale or use of the Seller's products sold prior to the Closing Date or included in the Assets; (iv) product warranty and return liabilities arising out of sales prior to the Closing Date; (v) claims arising out of any Environmental Laws; (vi) litigation, whether disclosed or undisclosed; (vii) any undisclosed liabilities; (viii) liabilities pursuant to any contract, order, payable, commitment, obligation, agreement, lease or undertaking other than as specified in Sections 1.1(c) and 1.1(d) above; and (ix) liabilities expressly not assumed by the Buyer pursuant to the provisions of this Agreement (all of the foregoing being referred to herein as the "Excluded Liabilities"), which shall remain the sole responsibility of the Seller (whether or not the Buyer is alleged to have liability as a successor to the Seller).

3

3.    CLOSING

3.1.    Closing.  The closing of the transactions contemplated by this Agreement
(the "Closing") shall take place at 10:00 a.m. on or before October ___, 2017 at the offices
of Rattet PLLC, or such other place as the parties shall mutually agree, 10 days after the
entry of an order authorizing the sale of the assets.

4.    REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer as follows:

4.1.    Organization; Capitalization.

(a)    The Seller is a limited liability company duly organized, validly existing and
        in good standing under the laws of the State of New York.  The Seller has
        full corporate power and authority to own, lease and operate its properties
        and to carry on the Business as it is now being conducted, subject to the
        jurisdiction and orders of the Bankruptcy Court.

(b)    All of the issued and outstanding membership interests of Seller are owned,
        beneficially and of record, by the persons and in the amounts set forth on
        Schedule 4.1 annexed hereto and no other party has any rights, claims or
        options to acquire, by conversion or otherwise, any of the membership
        interests of the Seller, except as provided for in Seller's Existing Operating
        Agreement.

4.2.    Power and Authority.  The Seller has the power and authority (subject to the
jurisdiction and orders of the Bankruptcy Court) to enter into this Agreement and each
other document to be executed or delivered in connection with the transactions
contemplated hereby, and to carry out the transactions contemplated hereby.  The
execution and delivery of this Agreement by the Seller and the consummation of the
transactions contemplated hereby have been duly authorized by the members of Seller
in conformity with applicable law and Seller's operating agreement.  This Agreement is,
and will be, upon execution and delivery, a legal, valid and binding obligation of the Seller,
enforceable against Seller, in accordance with its terms.

4.3.    No Consent Required.  Neither the execution, delivery or performance by
the Seller of this Agreement nor the consummation of the transactions contemplated
hereby or thereby, will require any notice of declaration, filing or registration with, or
consent or approval of any third party or any governmental body, or other regulatory or
administrative authority, agency, bureau or commission, domestic or foreign
("Governmental Agency"), by the Seller, other than the Bankruptcy Court.

4.4.    No Violation.  Neither the execution, delivery or performance by the Seller
of this Agreement, nor the consummation of the transactions contemplated hereby, will
(i) violate, conflict with or result in a breach of any provision of the Certificate of
Incorporation or Bylaws of the Seller, or (ii) violate, breach or be in conflict with, or
constitute a default under, in any case, in any material respect, or permit the termination

4

of, or accelerate the performance required by, any debt or obligation of the Seller or result in the creation or imposition of any Lien upon the Assets, or (iii) violate (a) any material order, writ, injunction, decree, judgment, or (b) any material law, statute, rule or regulation of any Governmental Agency applicable to the Seller, or any of the Assets.

4.5.   Title to Assets.  The Seller has good, valid and marketable title to all of the Assets.  All tangible Assets are in good operating condition, subject to ordinary wear and tear.  On the Closing Date, the Seller shall deliver the Assets to the Buyer, free and clear of all Liens, pursuant to the Sale Order described herein.

4.6.   Compliance with Laws.

(a)   The Seller and its employees, officers, directors and agents have complied, and are in compliance, with all federal, state and local laws, regulations, restrictions, orders, ordinances, codes, injunctions and decrees, including, without limitation, the Employee Retirement Income Security Act, and those relating to unemployment insurance and anti-discrimination.  There is no action or proceeding pending or threatened, nor is there any basis for any such action or proceeding, affecting the Seller, the Assets or the Business or involving this Agreement or the transactions contemplated hereby.

(b)   There are no health, safety, State Liquor Authority, building or zoning violations pending against the Premises as of the date of this Agreement.

4.7.   Non-Infringement.

(a)   Schedule 1.1(e) annexed hereto sets forth a true, accurate and complete list of all the Intellectual Property owned by Seller.  The Seller has not received any notice claiming that the Seller is infringing upon or otherwise acting adversely to any copyrights, trademarks, trademark rights, service marks, service names, trade names, patents, patent rights, licenses or trade secrets owned by any third party.  The Seller is the sole and exclusive owner of all the Intellectual Property and has sole and exclusive rights to the use thereof.   The Intellectual Property is free and clear of all Liens and no consent of third parties is required for the use thereof by the Buyer upon completion of the transactions contemplated hereby.

(b)   There is no pending or, to the knowledge of the Seller, threatened claim, regarding the use of the Intellectual Property, nor has it been alleged that the Seller is engaged in any infringement.

4.8.   Litigation.  Except as specified in Schedule 4.8 annexed hereto, there is no claim, legal action, arbitration, governmental investigation or other legal or administrative proceeding, nor any order, decree or judgment in progress, pending or in effect, or to the best knowledge of Seller threatened, against or relating to the Seller, its properties, assets or Business, and Seller has no reasonable ground to know of any basis for the same.

5

4.9.   Tax Matters.  The Seller, in a timely manner, has filed all Tax returns and other reports required of it under all federal, state, local and foreign Tax laws, including but not limited to its Federal Form 1120 for the period ending December 31, 2016.  All such returns and reports are correct and complete.  The Seller has paid in full all Taxes or other amounts due thereunder, including without limitation all Taxes that the Seller is obligated to withhold from amounts paid or payable to or benefits conferred upon employees, creditors and third parties.  No Tax examinations or audits of the Seller are in progress.  There are no Tax liens upon the Seller or the Assets (other than a lien for current taxes not yet directly payable).  There are no obligations relating to, or claims asserted for, Taxes or assessments against the Seller or the Assets or the Business, except for a pending New York State Sales Tax claim, which shall be paid at Closing from the Purchase Price (which authorization shall be included in the Sale Order). Seller does not have any reasonable ground to know of any basis for the same. The Assets are not subject to any obligation or liability for any Taxes whatsoever that may be payable by the Buyer.   For purposes hereof, "Tax" means any federal, state, local, or foreign tax, including, without limitation, any income, unincorporated business, gross receipts, license, payroll, employment, excise, severance, occupation, premium, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, water, sewer, assessment for improvements, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum or estimated tax, including any interest, penalty, or addition thereto, whether disputed or not.

4.10.   Employees; Agents.  Annexed hereto as Schedule 4.10 is a true, accurate and complete list of the Seller's employees and independent contractors, together with their titles, rate of compensation, and benefits payable.  There are no agreements or arrangements providing for the payment of any bonus or commission based on sales or earnings that are not cancelable by Seller on notice.

4.11.   Bankruptcy Schedules.  The Bankruptcy Schedules filed with the Court are complete and accurate to the best knowledge of Seller.

4.12.   Liabilities.  The Seller has no liability, indebtedness, claim or obligations, know or unknown, matured or unmatured, contingent or otherwise (collectively, "Liabilities") other than:

(a)   Liabilities disclosed or provided for in the Bankruptcy Schedules;

(b)   Liabilities disclosed in this Agreement and the Schedules referred to in this Agreement;

(c)   Liabilities incurred in the ordinary course of business of Seller consistent with past custom and practice between September 1, 2014 and the Effective Date of this Agreement.

4.13.   Finders/Brokers.  Seller has engaged, and is solely responsible for the payment of any compensation to the firm of Great American Brokerage, Inc. (Attn: Paul Fetscher).  Such compensation shall be subject to a separate written agreement between

~~Seller and broker, and subject to~~ Bankruptcy Court approval. ~~In the event any~~ claim is made against ~~Buyer~~ by said broker or any other broker or finder for a commission or fee arising from this transaction, ~~Seller~~ shall indemnify and hold harmless Buyer from any and all such ~~claims~~ (including ~~reasonable~~ attorneys' fees, and said indemnification obligation shall survive the Closing.

4.14.  Insurance.  Seller has maintained and will maintain until the Closing Date, in full force and effect, policies of insurance against fire, theft and casualty in adequate amounts to insure its interest in all tangible property owned or leased by Seller and used in the Business. Seller maintains and will continue to maintain until the Closing Date the insurance currently in place against risks covered in general public liability policies and social host liability.

4.15.  Employee Benefit Plans.  All amounts payable by Seller on account of any agreement with respect to employee benefits, including pension benefits and health and welfare insurance have been paid or accrued as a liability on its behalf. Seller's employee benefit plans comply with ERISA (the Employee Retirement Income Security Act of 1974, as amended) and other applicable federal and state laws. *The Debtor represents that ERISA is not applicable and/or its similar state laws*

4.16.  Disclosure.  No representation or warranty by the Seller in this Agreement, and no statement contained in any Exhibit, Schedule, list, certificate or other instrument furnished or to be furnished to the Buyer pursuant to this Agreement or in connection with the transactions, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements contained therein not misleading.

5.    REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller as follows:

5.1.  Organization of the Buyer.  The Buyer is a New York limited liability company, duly organized, validly existing and in good standing under the laws of the State of _____. The Buyer has full power and authority to own, lease and operate its properties and to carry on its business as it is now being conducted.

5.2.  Power and Authority.  The Buyer has the power and authority to enter into this Agreement and to carry out the transactions contemplated hereby. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by the members of the Buyer in conformity with applicable law and its operating agreement. No other proceedings on the part of the Buyer are necessary to authorize the execution or delivery of this Agreement or the consummation of the transactions contemplated hereby. This Agreement is a valid and binding obligation of the Buyer, enforceable in accordance with its terms against the Buyer.

5.3.  Consents.  Neither the execution, delivery or performance by the Buyer of this Agreement nor the consummation of the transactions contemplated hereby, will

require any notice to, or declaration, filing or registration with, or consent or approval of any third party or any Governmental Agency, by the Buyer.

5.4.    No Violation. Neither the execution, delivery or performance by the Buyer of this Agreement, nor the consummation of the transactions contemplated hereby, will (i) violate, conflict with or result in a breach of any provisions of the Certificate of Organization or Bylaws of the Buyer, or (ii) violate, breach or be in conflict with, or constitute a default under, in any case, in any material respect, or permit the termination of, or accelerate the performance required by, any debt or obligation of the Buyer, or result in the creation or imposition of any lien, charge, mortgage, security interest, or encumbrance of any kind whatsoever upon the Buyer or the assets of the Buyer, or (iii) violate in any material respect, any order, writ, injunction, decree, judgment, or any law, statute, rule or regulation of any Governmental Agency applicable to the Buyer or any of its assets.

5.5.    Finders/Brokers. The Buyer has not made any agreement with any person or entity or taken any action which would cause any person or entity to become entitled to an agent's, broker's or finder's fee or commission in connection with the transactions contemplated hereby.

6.    COVENANTS

6.1.    Tax Obligations. The Seller shall be responsible for transfer, sales and use taxes, if any, imposed on the purchase and sale of the Assets hereunder. On the Closing Date, the Seller agrees to pay whatever transfer, sales or use taxes are determined to be due.

6.2.    Confidentiality and Publicity. The parties agree to consult with each other in issuing any press releases and other public statements with respect to the transactions contemplated hereby and shall not issue any such press release or statements without the other's prior written consent (which consent shall not be unreasonably withheld), except as may be required by law or regulation. Nothing contained herein shall restrict the parties' ability to submit such information as is necessary in the bankruptcy proceedings or in any private placement materials prepared by Buyer.

6.3.    Consents. The Buyer and the Seller shall cooperate with each other and any third party, and use their best efforts, to obtain any consents necessary to consummate the transaction contemplated hereof. Buyer shall have the option of terminating this Agreement upon the failure to obtain a necessary consent to the assignment of ~~any asset hereunder which is material to the successful conduct of the Business and for which no reasonable substitute is available~~. In such event, this Agreement shall be null and void. This provision shall expressly survive Closing.

6.4.    Additional Assurances. Following the Closing Date, the parties shall cooperate with each other (without further consideration) and shall execute and deliver to each other such other documents as may be requested by Buyer as necessary or

desirable in order to more effectively sell, transfer and assign record title of the Assets to the Buyer hereunder.

6.5. <u>Risk of Loss</u>. Seller assumes all risk of loss due to fire or other casualty up to the time of Closing. If any loss occurs prior to the Closing Date, or if the Business is closed or interrupted for a period in excess of ten (10) days by reason of any event not in the ordinary course of business, Buyer shall have the right to terminate this Agreement on written notice to Seller. Upon such termination there shall be no further liability of either party hereunder.

6.6. <u>Use of Name</u>. From and after the Closing Date, Seller shall not use the name Little Bamboo/~~Le Bar~~, or any similar variant thereof in any form or combination in any manner.

6.7. <u>Access to Books, Records and Facilities</u>: Between the date hereof and the Closing Date, Buyer and its authorized representatives, upon request will have access to and will have the right to inspect, all books, records and facilities of the Business upon reasonable notice during regular business hours. Buyer will treat as confidential and will not disclose to third parties any information or documents which are not public knowledge or were not known to Buyer prior to disclosure by Seller. In the event that the transactions contemplated hereunder shall not be consummated, Buyer will immediately return such documents and other information and all copies thereof to Seller.

~~6.8. Seller's Retirement Plan(s): Seller shall retain sole responsibility for the administration of any existing Retirement Plan(s) and for compliance by said Plan(s) with all applicable Federal and State statutes and regulations.~~

6.9. <u>Conduct of Seller Through Closing</u>.

(a) <u>Bid Procedures Order</u>. Seller has already obtained from the Bankruptcy Court entry of an order (the "<u>Bid Procedures Order</u>") approving procedures to be used in connection with the sale of the Assets by the Seller (the "<u>Bid Procedures</u>") and Buyer acknowledges hereunder receipt and notification of the Bid Procedures.

(b) During the period between the Effective Date of this Agreement and Closing, Seller shall not transfer, divest or encumber any Assets without the Buyer's prior written consent (except that Seller may use its existing Con Edison deposit towards payment of its electric bill).

(c) Seller shall use its best efforts to maintain its current "A" rating with the New York City Department of Health. Seller shall remedy any violations received between the Effective Date and Closing, including but not limited to those issued as part of any downgrade from the existing "A" rating. Any unpaid expenses incurred by Seller to remedy any Health Department deficiencies issued between the Effective Date and Closing will be a reduction of the Purchase Price.

9

(d)     All utilities current as of the Effective Date shall remain current through Closing. Any balance on said accounts at Closing shall be a credit to Buyer in calculating the final Purchase Price, or, at Buyer's option, shall be paid directly from the Purchase Price at Closing. In no event shall there be any credit to Seller. Seller shall indemnify and hold Buyer harmless from and against any claims made by any utility company for utility charges incurred prior to Closing, which indemnification shall survive Closing.

(e)     All vendors on post-petition accounts as of the Effective Date shall remain current through Closing.

(f)     The Premises Lease shall remain current through Closing. Any unpaid arrearages of rent, taxes or utility charges or other amounts due under the Premises Lease shall be paid directly from the Purchase Price at closing.

(g)     All licenses described in Section 1.1(b) herein shall remain in effect, and all required fees for same shall remain current through Closing. Any unpaid arrearages of such fees shall be a credit to Buyer in calculating the final Purchase Price. Specifically, Seller is the holder of an on-premises liquor license for the Premises issued by the New York State Liquor Authority (License No. 1285743), which Seller represents to be in full force and effect.

(h)     Not more than two (2) business days prior to Closing, Seller shall deliver a wine and liquor inventory ("Original Beverage Inventory") to Buyer. Such inventory shall contain (i) with regard to wine: vintage; number of cases; wholesale cost per case; and (ii) with regard to liquor: liquor type, brand, number of bottles and wholesale cost per bottle.

(i)     Not more than seven (7) days prior to Closing, Seller shall deliver to Buyer an inventory of all the following items on the premises as of the Effective Date; furniture, furnishings, kitchen equipment, glassware, dishes, flatware, linens, artwork (other than specified in Schedule 1.2) and computers (the "General Inventory"). All such items shall be delivered, at the Premises at Closing.

6.10. Expenses. The Buyer and Seller shall each bear their own expenses in negotiating and closing the proposed Acquisition.

7.     CONDITIONS TO OBLIGATIONS OF THE BUYER TO CONSUMMATE THE TRANSACTION – DELIVERABLES AT CLOSING.

7.1.   Conditions to Closing. The obligations of Buyer under this Agreement to Close this transaction shall be further subject to the satisfaction or waiver, by the Buyer, of the following conditions:

(a)     Sale Order. The Seller obtaining a Sale Order, in form satisfactory to Buyer, approving this Agreement and the Acquisition, including the assignment

10

and assumption of the Premises Lease under Section 365 of the Bankruptcy Code, which Sale Order shall include the terms specified in Schedule "A":

(b) Contact with Landlord: Seller expressly agrees that Buyer may, after the Effective Date hereof, contact the Landlord directly for the purposes of providing information the Landlord may require regarding the purchase and sale transaction.

(c) Buyer shall have obtained an order from the Bankruptcy Court authorizing assignment and assumption of the Premises Lease.

(d) No Violations. There shall be no health, safety, State Liquor Authority, building or zoning violations against the Business or Premises as of the Closing.

7.2. Bill of Sale/Other Documents. The Seller shall have delivered to the Buyer a Bill of Sale, and an Assignment and Assumption of the Premises Lease, each duly executed by the Seller, together with any required documents for the effective transfer of Seller's Intellectual Property, all in form satisfactory to Buyer.

7.3. Delivery of Assets. The Seller shall have delivered the Assets to the Buyer free and clear of all Liens, and shall have provided the Buyer with evidence of same, including, but not limited to, the Sale Order, and, where applicable, executed UCC-3 financing statements with respect to all of the Assets, together with any required third-party consents to assignments.

7.4. Secretary's Certificate. The Buyer shall have received a certificate duly executed by an officer or managing member of Seller, certifying as to the resolutions adopted by the members of Seller, approving the execution of this Agreement and the consummation of the transactions contemplated hereby and thereby, together with copies of such resolutions.

7.5. Change of Name. The Buyer shall have received an Amendment to the d/b/a Certificate of Seller (in a form suitable for filing and duly executed by the authorized officers or managing member of Seller) terminating its use of the name Little Bamboo/Le Bar.

7.6. Permits/Licenses. The Buyer shall have obtained all approvals and consents from all governmental agencies for the transfer of all permits and licenses necessary to operate the Business, or to the extent such permits and licenses are not transferable, for the issuance of new (temporary or permanent) permits and licenses to Buyer, including issuance of a new on-premises liquor license. Seller shall cooperate with Buyer in the submission of the applications and shall diligently assist Buyer in pursuing the transfer and/or issuance of the permits and licenses.

7.7. Employment Matters. Seller shall deliver to Buyer a confirming letter re: the termination of employment of all of Seller's employees.

7.8.   **Business Records**. Seller will deliver the Business Records, as defined in Section 1.1(i) herein, customer lists and telephone numbers to Buyer.

7.9.   **Additional Documents**. The Seller shall have executed and delivered to the Buyer such other instruments as shall be reasonably necessary or desirable in the opinion of the Buyer to sell, transfer and assign the Assets to the Buyer.

8.   CONDITIONS TO OBLIGATIONS OF THE SELLER TO CONSUMMATE THE TRANSACTION

The obligations of the Seller under this Agreement shall be subject to the satisfaction or waiver, by the Seller, of the following conditions on or prior to the Closing Date:

8.1.   **The Purchase Price**. The Buyer shall have delivered to the Seller, the Purchase Price, in accordance with Section 1.3 hereof.

8.2.   **Secretary's Certificate**. The Seller shall have received a certificate duly executed by an appropriate officer or managing member of the Buyer, certifying as to the resolutions adopted by the members of Buyer approving the execution of this Agreement and the consummation of the transactions contemplated hereby and thereby, together with copies of such resolutions.

8.3.   **Additional Documents**. The Buyer shall have executed and delivered to the Seller such other instruments as shall be necessary in the reasonable opinion of the Seller to consummate the transactions contemplated hereby.

9.   **Termination**. This Agreement may be terminated:

(a)   by the parties hereto pursuant to a writing executed and delivered by each of the parties;

Following a termination of this Letter pursuant to this Section 9, this Agreement shall have no force or effect and the parties shall have no further obligations hereunder; provided, however, that Sections 6.2 and 6.12 shall survive any such termination indefinitely.

10.   MISCELLANEOUS

10.1.   **Governing Law**. The parties agree that this Agreement shall be construed, enforced and governed by the laws of the State of New York without regard to applicable principles of conflict of laws.

10.2.   **Jurisdiction**. By its execution and delivery of this Agreement, each of the parties agrees that the Bankruptcy Court shall have exclusive jurisdiction with respect to any matter under or arising out of or in connection with this Agreement; provided that the parties acknowledge that any appeals from the Bankruptcy Court may have to be heard by a court other than the Bankruptcy Court.

12

10.3. No Third Party Reliance. The provisions of this Agreement are solely for the benefit of the Seller and Buyer and their respective successors and permitted assigns and no other person or entity shall acquire or have any right by virtue of this Agreement.

10.4. Assignment. Neither party may assign any of its rights or obligation hereunder without the prior written consent of the other party or pursuant to an order of the Bankruptcy Court (except upon prior written notice to the Seller, the Buyer may assign, its rights and obligations hereunder to a single purpose acquisition entity designated by Buyer for purposes of consummating the Acquisition), and any attempted assignment without such consent shall be void.

10.5. Waiver of Jury Trial. Each party hereto irrevocably waives all right to trial by jury in any action, proceeding or counterclaim (whether based on contract, tort or otherwise) arising out of or relating to this Agreement or the Acquisition or the actions of the parties hereto in the negotiation, performance or enforcement hereof or thereof.

10.6. Entire Agreement. This Agreement (including the Schedules hereto) shall supersede all prior agreements and understandings, both written and oral, between the parties hereto with respect to the subject matter hereof, and no party shall be liable or bound to the other in any manner by any warranties or representations not set forth herein or contemplated hereby.

10.7. Identical Counterparts. This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute the same instrument. PDF copies shall be accepted.

10.8. Modification. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all of the parties hereto.

10.9. Notices. Any notice, request, instruction or other document to be given hereunder by any party hereto to any other party shall be in writing and sent by registered or certified mail, postage prepaid, or sent by recognized overnight delivery service to the address set forth on page one of this Agreement., or at such other address for a party as shall be specified by like notice. Any notice which is addressed and mailed in the manner herein provided shall be conclusively presumed to have been given to the party to whom it is addressed at the close of business, local time of the recipient, on the third day after the day it is so placed in the mail or the next day following delivery to an overnight delivery service, as applicable. Copies of all such notices shall be delivered to Counsel for Seller as follows:

Rattet PLLC
202 Mamaroneck Avenue
Suite 300
White Plains, NY 10601
Attention: Robert L. Rattet, Esq.

And to Counsel for Buyer as follows:

Law Office of John J. Lynch
450 Seventh Avenue
Suite 704
New York, NY 10123
Attention: John Lynch

10.10. Survival of Obligations. Wherever specified herein, the parties' obligations hereunder shall survive closing.

10.11. Invalid Provisions. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future Laws, such provision shall be fully severable, and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.

10.12. Headings. The headings in this Agreement are for convenience of reference only and shall not control or affect the meaning or construction of this Agreement.

10.13. Deadlines. Any deadline set forth herein that (i) does not fall on a business day (i.e., a day on which federally chartered banks located in New York City are open for business) shall automatically be extended to the next business day, or (ii) requires a hearing to be held before the Bankruptcy Court, shall be subject to the Bankruptcy Court's calendar. All deadlines set forth herein may be modified by the parties in accordance with Section 10.8.

IN WITNESS WHEREOF, each of the parties hereto has signed this Agreement in counterparts all as of the date first above written.

175 LENOX RESTAURANT LLC
d/b/a LITTLE BAMBOO/LE BAR

EL ENCANTO DE LOLA 2 LLC


By: _____
      James Goldman
      President

By:   Fiacro Moran, President

EXHIBIT "2"



**Great American Brokerage Inc.**
**100 W. Park Avenue Suite 309  Long Beach, NY 11561**
(516) 889-7200          Fax (516) 889-5113
GtAmerican@aol.com          www.RestaurantExpert.com

November 3, 2017

Mr. Robert L Rattet
Rattet PLLC
202 Mamaroneck Ave
White Plains, NY 10601

Re: 175 Lenox Avenue Restaurant, LLC, d/b/a Little Bamboo

Dear Robert:

I am pleased to present an offer to purchase the Limited Liability Corporation, 175 Lenox Avenue Restaurant, LLC.

The purchaser is Mr. Moutaz Ali.  He is a skilled restaurateur and is Owner/Operator of:

Pergola Restaurant
36 W 28th St
New York, NY 10028
www.PergolaNewYork.com

Attorney for the Buyer:
Fred L. Seeman Esq.
32 Broadway, Suite 1214
New York, NY 10004
212-608-5000
Fred@SeemanLaw.com

He is prepared to proceed immediately and pay $240,000 for ownership of the LLC.

A bank check for $24,000 as initial deposit will be sent under separate cover.

There are no contingencies other than delivery of the LLC with the lease in place and subject to the approval of the Federal Bankruptcy Court.

This offer is subject to Great American Brokerage receiving a commission of 10% of the purchase price as full compensation for professional services.

Sincerely,

Paul G. W. Fetscher CCIM CRX CLS
President
GREAT AMERICAN BROKERAGE

Cc: Goldman, Ali, Seeman

EXHIBIT "3"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

175 LENOX RESTAURANT LLC,                            Chapter 11
                                                     Case No. 11-12490 (REG)
                                    Debtor.
------------------------------------------------------------------X

## ORDER (I) APPROVING BIDDING PROCEDURES, (II) APPROVING A BREAK-UP FEE, (III) APPROVING THE FORM AND MANNER OF NOTICE, AND (IV) SCHEDULING AN AUCTION AND SALE HEARING

Upon the motion dated November __, 2017 (the "Motion")[1] (Docket No. __) of 175 Lenox Restaurant, LLC, the above captioned debtor and debtor-in-possession (the "Debtor"), by its attorneys, Rattet PLLC, seeking entry of an Order (i) establishing bidding procedures to govern the Sale of substantially all of the Debtors' Assets between the Debtor and [El Encanto de Lola 2 LLC][Mr. Moutaz Ali]  (ii) scheduling an Auction to sell the Assets, subject to higher and better bids; (iii) scheduling a hearing to approve the Sale of the Assets in accordance with the Auction (the "Sale Hearing"); and (iv) approving the form and manner of notice of the Sale, the Bidding Procedures, the Auction and the Sale Hearing; and a hearing having been on November __. 2017 at _:00 a.m. on the Motion; and due deliberation having been had thereon; and the Court having determined that due notice having been given; and all objections to the Motion, if any, having been either resolved, withdrawn and/or overruled; and good and sufficient cause appearing to grant the relief requested in the Motion, it is hereby

**ORDERED,** that the Debtor is authorized to conduct an Auction for the sale of the Assets in accordance with the Bidding Procedures; and it is further

**ORDERED**, that the Bidding Procedures and Bidding Registration, as amended, are hereby approved; and it is further

---

[1] Capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the Motion.

**ORDERED**, that notice of the contemplated sale and auction shall be advertised as described in Paragraph 35 of the Motion; and it is further

**ORDERED**, that the deadline for submitting bids to become Qualified Bids is 5:00 p.m. (Eastern Standard Time) on November __, 2017, at the offices of Debtor's counsel, Rattet PLLC, 202 Mamaroneck Avenue, White Plains, New York 10601; and it is further

**ORDERED**, that the bid of a Purchaser as set for in the APA is a Qualified Bid; and it is further

**ORDERED**, that a report of Qualified Bids, if any, shall be filed electronically with the Court by the Debtor's counsel no later than 5:00 p.m. (Eastern Standard Time) on November __, 2017; and it is further

**ORDERED**, that the Debtor will conduct an Auction commencing at ____ _.m. on November __, 2017 at the United States Bankruptcy Court, One Bowling Green, New York, NY 10004; and it is further

**ORDERED,** that if no Qualified Bids (other than the bid of El Encanto de Lola 2 LLC's) are timely received, the bid of the Mr. Moutaz Ali shall be deemed the highest and best bid; and it is further

**ORDERED,** that a report of the Auction, if applicable, shall be filed electronically with the Court by the Debtor's counsel no later than 5:00 p.m. (Eastern Standard Time) on September 12, 2011 and a copy provided to the Office of the United States Trustee and the members of the Official Committee of Unsecured Creditors; and it is further

**ORDERED,** that a hearing shall be held before the Honorable Michael E. Wiles, United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, Courtroom 621, New York, New York 10004 on November __, 2017 at

___ _.m. or as soon thereafter as counsel may be heard (the "Sale Hearing"), to confirm the results of the Auction sale and authorize the sale of substantially all of the Debtor's Assets, based upon the results of the Auction, and grant such other related relief as may be deemed necessary or proper by the Court; and it is further

**ORDERED,** that objections to the relief to be considered at the Sale Hearing shall be filed by November __, 2017 at 5:00 p.m. with the Bankruptcy Court at the Court's website https://ecf.nysb.uscourts.gov/cgi-bin/login.pl (password and log in required), with a copy delivered directly to Chambers and served upon: (a) counsel to the Purchaser; (b) the Office of the United States Trustee; and (c) Parties filing a Notices of Appearance; and it is further

**ORDERED,** that the Landlord reserves all of its rights under the bankruptcy code with respect to the sale, including all rights to adequate assurances, pre-petition and post-petition rent, the right to object to the quality and/or suitability of the Purchaser, and all other rights reserved under the Bankruptcy Code; and it is further

**ORDERED**, that on or before 5:00 p.m. on November __, 2017, the Debtor shall serve this Order along with the Bidding Procedures via first class mail upon: (a) counsel to the Debtor; (b) counsel to the Purchaser; (c) the Office of the United States Trustee; and (c) Parties filing a Notices of Appearance; and it is further

**ORDERED**, that the Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: New York, New York
      November __, 2017

_____
HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT "4"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

175 LENOX RESTAURANT LLC                  Chapter 11
                                          Case No. 11-12490 (REG)
                                  Debtor.
------------------------------------------------------------------X

**ORDER: (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF THE
DEBTOR'S COMMERCIAL LEASE; (II) AUTHORIZING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS PURSUANT TO
SECTION 363 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF
ALL LIENS, CLAIMS AND ENCUMBRANCES; (III) AUTHORIZING AND
APPROVING THE TERMS OF THE DEBTOR'S ASSET PURCHASE
AGREEMENT AND RELATED AGREEMENTS AND AUTHORIZING
CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED
THEREIN;
AND (IV) GRANTING RELATED RELIEF**

Upon the motion dated November __, 20171 (the "Sale Motion")[1] (Docket No. __) of 175

Lenox Restaurant, LLC the above captioned debtor and debtor-in-possession (the "Debtor"), by its

attorneys, Rattet PLLC, seeking *inter alia* entry of an Order pursuant to §§ 105(a), 363(b) and

(f), and 365 of title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"),

and Rule 2002, 6004, and 6006 and 1121(d) of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rule(s)") authorizing and approving the sale of substantially all of the Debtor's

Assets (the "Sale"), subject to higher and better offers; and a hearing having been held on

November   __, 2017 approving the Sale Procedures and an Order to that effect having been

entered on November __, 2017 (Docket No. __); and the Debtor having filed a Report of Bids

disclosing that _____ ("Purchaser") submitted a qualified bid for the [Debtor's Assets in the

amount of $175,000 plus adjustment for the Debtor's $_____ security deposit (Docket No.

---

[1] Capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the Sale Motion.

__);][Debtor in the amount of $240,000 less brokerage commission in the amount of $24,000] and the Debtor having filed an Auction Report (Docket No. __) indicating that the Purchaser has been deemed the successful bidder; and a hearing having been held on November __, 2017 to approve the bid of the Purchaser as the Successful Bid and otherwise approve and authorize the Sale; and no objections having been filed; and good cause having been shown

**THE COURT HEREBY FINDS AND CONCLUDES:**

A.     That the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Southern District of New York dated July 10, 1984 (Ward, C.J.). This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A), (M), (N) and (O).

B     That venue of this proceeding in this District is proper under 28 U.S.C. §§1408 and 1409.

C.     That: (i) adequate notice of the Sale has been given pursuant to Bankruptcy Rules 2002 and 6004; (ii) there exists adequate business justification for the immediate sale of the Debtor's Assets; (iii) the Debtor has made sufficient marketing efforts under the circumstances; (iv) no objections having been filed;  (v) Purchaser was determined to offer the highest and best bid; (vi) Purchaser is a good faith purchaser of the Debtor's Assets within the meaning of 11 U.S.C. Section 363(m); and (vii) good and sufficient cause existing for the granting of all of the relief requested in the Motion as set forth herein below.

D.     That: (a) the Purchaser has provided the Landlord with financial and other related documentation in satisfactory form to give the Landlord adequate assurance of future performance under the Lease; (b) the effective date of the assignment of the Lease to Purchaser shall be December 1, 2017.

**BASED UPON THE FOREGOING FINDINGS, IT IS HEREBY**

**ORDERED,** that the findings set forth above and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed.  To the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed; and it is further

**ORDERED**, that Purchaser is authorized and directed to close on the APA within five (5) days following the entry of this Order; and it is further

**ORDERED**, that Purchaser is directed to pay to the Debtor's counsel, as escrow agent, the total cash sum of _____ representing the balance of the purchase price and adjustment for the security deposit due at the closing of the APA (acknowledging that $_____ has already been remitted to Debtor's counsel by Purchaser upon the execution of the APA as a good faith deposit) (cumulatively, the "Purchase Price"); and it is further

**ORDERED**, that in consideration of the Purchase Price, the Debtor be, and is hereby, authorized and empowered to convey to Purchaser all of its right, title and interest in the Assets as set forth in the APA, free and clear of all Taxes (as defined in the APA), liens, debts, causes of action, obligations, liabilities, interests, encumbrances, charges, mortgages and claims of any kind, nature, description or kind whatsoever whether fixed or contingent, perfected or

unperfected (collectively, the "Liens"), with all such Liens to attach to the proceeds of the sale in the order of their priority and to the extent of their validity pursuant to 11 U.S.C. Section 363(f); and it is further

**ORDERED**, that the Sale of the Assets to Purchaser specifically includes the assumption of the Debtor's lease of the premises, from which it used to operate, located at: 175 Lenox Avenue, New York, New York subject to the making of the payment of $120,000 curing all arrears and defaults in the Debtor's lease agreement with Lenox NY, LLC, and it is further

**ORDERED,** that upon receipt of the Cure Payment, the Landlord shall forever be barred, estopped, and permanently enjoined from raising or asserting against the Debtor, James Goldman, Purchaser, and any of their affiliates, officers, directors and agents, or the property of any of them: (a) any fee, monetary or nonmonetary default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable), secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Lease arising by reason of the closing of the transactions contemplated by this Order (other than as expressly provided in this Order or agreed to in a signed writing between Purchaser and the lease counterparty), including without limitation any tenant improvement obligations, recoupment rights, rent, percentage rent, common area charges, real estate taxes or utilities or other charges owing under the Lease or any guaranty executed by 175 Lenox, LLC; and it is further

**ORDERED,** upon payment of the Cure Payment, the Debtor and the Debtor's estate shall be deemed to have released the Landlord from any and all claims arising from or relating to the Lease, the Premises  and the Debtor's occupancy thereof, that may or could have been heretofore or hereafter asserted against the Landlord or any of their respective shareholders,

directors, officers, employees, agents, attorneys, representatives and assigns, or any of their respectively owned corporations, entities, investments or assets of any kind; and it is further

**ORDERED**, that the Debtor, or its counsel, shall be permitted pay at Closing any required transfer taxes, adjustments or ordinary costs associated with a sale of assets and/ or the assignment of a lease agreement in New York City and the balance of the Purchase Price shall be held in escrow by Rattet PLLC as escrow agent, pending further order of this Court; and it is further

**ORDERED,** the Purchaser is hereby granted "good faith purchaser" status in accordance with Section 363(m) of the Bankruptcy Code and is afforded all of the rights and protections provided by Section 363(m) of the Bankruptcy Code; and it is further

**ORDERED**, that (a) Debtor is hereby authorized and directed to (i) execute and implement the APA, as well as any additional instruments or documents that may be necessary or appropriate to implement the APA, provided that such additional documents do not materially change its terms; (ii) consummate the sale in accordance with the terms and conditions of the APA and the instruments and agreements contemplated thereby; and (iii) take all further actions as may reasonably be requested by the Purchaser for the purpose of transferring the Assets; and (b) each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA; and it is further

**ORDERED,** that the Debtor is hereby authorized to assume and assign the Lease to Purchaser and such assumption and assignment is hereby approved pursuant to Section 365 of the Bankruptcy Code; and it is further

**ORDERD,** that the Debtor shall be authorized to execute and deliver to Purchaser at

Closing a Bill of Sale and assignment of lease pursuant to the authorization set forth in this Order; and it is further

ORDERED, that in the event that the Purchaser fails to close on the sale in accordance with the foregoing, any deposit made by the Purchaser shall be forfeited to the Debtor, and the Purchaser waives any and all rights to object to or otherwise seek recovery of said forfeited deposit; and it is further

ORDERED, that the sale by the Debtor is hereby deemed made without any representations or warranties of any kind other than any representations or warranties under the APA, upon the record of the hearing or as otherwise set forth in this Order; and it is further

ORDERED, that Purchaser and its agents, and the Debtor and its agents, are hereby authorized, empowered and directed to execute all documents and instruments necessary to effectuate the foregoing; and it is further

ORDERED, that the Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: New York, New York
      November __, 2017

_____
HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

# BIDDING PROCEDURES

**The Debtor and Its Assets.** The Chapter 11 Debtor is 175 Lenox Restaurant, LLC, pending in the Bankruptcy Court for the Southern District of New York, New York Division, Case No. 17-11344 (MEW). The Debtor owns a business that used to operate a restaurant located at 175 Lenox Avenue, New York, New York. The Sale is alternatively for substantially all of the Debtor's assets including (1) the Debtor's interest for the lease of the premises located at 175 Lenox Avenue, New York, New York, (2) all tangible personal property, including all furniture, fixtures and equipment located at the store and (3) all inventories (collectively, the "Assets"). The sale will not include: (1) cash on hand, (2) all accounts receivable and claims and causes of action of any kind belonging to the Seller; (3) all insurance claims relating to the Seller or Seller's operation of the Store until the Closing Date; (4) any original corporate minute books or stock ledger of the Seller; (5) all books and records of the Seller; (6) all personal property of James Gdman located at the Store or Premises; (7) the Security Deposit held by the Landlord in the sum of $75,000; (7) the Purchase Price; and (8) all causes of action belonging to the Seller's bankruptcy estate pursuant to Sections 542 through 553 of the Bankruptcy Code, inclusive **or** all of the limited liability company interests. For further information on the Debtor and its Assets, please contact Rattet PLLC, Attn: Robert L. Rattet, Esq. or James B. Glucksman, Esq. (914) 381-7400.

**A)      Qualified Bidder.** An entity that is seeking to become a qualified bidder ("Qualified Bidder") will deliver no later than _____ **at 5:00 p.m.**: (1) financial information reasonably necessary to demonstrate an ability to consummate a sale on the terms proposed; and (2) 10% deposit of the offer in cash or cash equivalent, to Rattet PLLC, 202 Mamaroneck Avenue, Suite 300, White Plains, New York 10601, Attn: Robert L. Rattet, Esq. or James B. Glucksman, Esq. The Debtor reserves the right to waive nonmaterial defects in becoming a Qualified Bidder prior to the auction, in its discretion.

**B)      Qualified Bids.** The Debtor will consider as higher or better offers only those bids that constitute Qualified Bids. A "Qualified Bid" is a bid submitted by a Qualified Bidder that:

1.      (i) Is in writing, (ii) does not request or entitle the bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment, (iii) such offer is not subject to due diligence or any other material condition other than Bankruptcy Court approval of the offer and delivery of necessary documents and instruments of transfer at closing, (iv) such Qualified Bidder is prepared to enter into and consummate the transaction no later than one (1) business day following the Sale Hearing (Backup Bidders, as defined below, shall be prepared to close five (5) days thereafter), and (v) each such Qualified Bidder's offer is irrevocable until the closing on the Debtor's Assets, except for the bid of the Stalking Horse which shall remain open for 14 days after the Sale Hearing, unless otherwise agreed between the Debtor and the Purchaser;

2.      Is a proposal that the Debtor determines is proposed by one or more persons that are financially able to consummate the purchase of the Assets, and,(i) is accompanied by current audited or verified financial statements of, or verified financial commitments obtained by, the potential bidder (or, if the potential bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach); and (ii) accompanied by a deposit of cash or cash equivalent which is ten percent (10%) of the bid amount (the "Deposit"). All such checks shall be made payable to "Rattet PLLC, as attorneys", to be held by Rattet PLLC pending the results of the Auction (as defined below). The Deposit shall be returned within two (2) business days after the closing of the Sale of the Assets to the winning bidder, except that the Debtor shall hold the Deposit of the winning bidder (as determined by the Court) and apply such Deposit to the Purchase Price at the closing or as otherwise set forth below; and

1

3.      Is received no later than **5:00 p. m., prevailing Eastern time, on September 7, 2011** (the "Bidding Deadline"), by counsel to the Debtor, Rattet PLLC, 202 Mamaroneck Avenue, White Plains, NY 10601, Attn: Robert L. Rattet, Esq. and James B. Glucksman, Esq.

El Encanto de Lola 2, LLC and Mr. Moutaz Ali or Designee are Qualified Bidders for all purposes hereunder.

**C)     Diligence.** Any party interested in submitting a bid for the Assets may contact the Debtor's counsel for the purpose of receiving information concerning the Assets to be sold and arranging for a site visit at the office of counsel to the Debtor located in White Plains, NY or alternatively at the Debtor's premises located in New York, NY for the purpose of viewing and analyzing the information; provided, that such party shall first sign an appropriate confidentiality agreement. Any additional due diligence shall not continue after the Bidding Deadline and no Qualified Bid shall contain a due diligence condition.

**D)     Auction.** If the Debtor receives a Qualified Bid by the Bidding Deadline, an auction (the "Auction ") will be held \_\_\_ \_.m. on _____ at the United States Bankruptcy Court, One Bowling Green, Courtroom \_\_\_, New York, NY 10006. Only Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction. Bidding at the Auction will continue until such time as the highest and/or otherwise best Qualified Bid is received. The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (e. g., the amount of time allotted to make subsequent overbids) for conducting the Auction. In addition, the Debtor shall have the right to entertain bids that do not conform to one or more of the non-material requirements specified in the Bidding Procedures Order and deem such bids Qualified Bids, subject to Court approval at the hearing to approve the Sale on _____ \_.m. If the Debtor does not receive any Qualified Bids by the Bidding Deadline, the Debtor reserves the right to cancel the Auction.

**E)     Deposit.** In the event that a Qualified Bidder is the winning bidder, and such winning bidder fails to consummate the proposed transaction by the closing date set forth in such winning bidder's purchase agreement, that bidder 's deposit shall be forfeited to the Debtor's estate (as liquidated damages, i.e., the Debtor reserves the right to pursue all remedies that may be available to it) and the Debtor shall be free to consummate the proposed transaction with the next highest bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next highest bidder, and so forth) without the need for an additional hearing or order of the Court.

**F)     Backup Bidder.** All bids submitted for the purchase of the Debtor's Assets shall remain open, and all deposits held in the attorney escrow account of the Debtor's counsel until the sale of the Debtor's Assets to the Successful Bidder is consummated.  In the event that the Successful Bidder is unable to consummate on the sale of the Debtor's Assets, the next highest and/or best bidder (the "Backup Bidder") will then be required to consummate on the sale of the Debtor's assets. However, if the Purchaser is the Backup Bidder, the Purchaser's bid shall remain open for 14 days after the Sale Hearing, unless otherwise agreed between the Debtor and the Purchaser.

# OFFER & BIDDER REGISTRATION

With respect to the bankruptcy sale of the Assets 175 Lenox Restaurant, LLC, pending in the United States Bankruptcy Court for the Southern District of New York, New York Division, Case No. 11-12490(REG), as detailed in the Debtor's Motion For Order Authorizing the Debtor To Conduct Auction Of Substantially All Of The Debtor's Assets ("Motion") Bidder,_____ , does hereby offer to purchase on an all-cash basis the Assets set forth below for the consideration as allocated below:

Bidder hereby warrants and represents as follows:

   (a)   This written offer is subject to the terms and conditions of the accompanying contract and the "Bidding Procedures."

   (b)   This written offer along with any subsequent verbal bids are irrevocable until the earlier to occur of (i) the Closing (as defined in the Bidding Procedures) or (ii) forty-five (45) days following the Auction.

   (c)   This written offer is not contingent upon any financing.

   (d)   That, except as detailed on an accompanying affidavit, if any, neither Bidder nor any of its officers, directors, shareholders, members or partners is a shareholder, employee, or affiliate of the Debtor, or a relative of a shareholder, employee, or affiliate of the Debtor.

   (e)   That Bidder had an opportunity to, or waived any right to, inspect and examine the Assets identified above and to review the applicable Lease and all other pertinent documents with respect thereto prior to making its offer and that Bidder relied solely on that review and upon its own investigation and inspection of the Assets in making its offer; that Bidder is not relying upon any written or oral statements, representations or warranties of the Debtor, its agents, representatives, consultants and/or attorneys, and that Bidder has obtained a complete copy of the "Bidding Procedures" and has read and understood same and agrees to abide by and be bound by such "Bidding Procedures."

AGREED & ACCEPTED this _____ day of _____, 2017.

By:_____

      (signature)

      Name:_____

      Title:_____

### *BIDDER I.D.*

Bidder's Address:_____

Bidder's Contact:_____

Bidder's Phone & Facsimile Numbers: _____

Bidder's Email Address: _____

Bidder's Tax ID Number: _____

Any Business or Trade Names under which Bidder Operates: _____

### *ATTORNEY I.D.*

Bidder's Attorney: _____

Bidder's Attorney's Address:_____

Bidder's Attorney's Phone & Facsimile Numbers: _____

Bidder's Attorney's Email Address: _____

### *BANK REFERENCE*

Bank Name & Bank Contact:_____

Bank Address: _____

Bank Contact's Phone Number:_____

EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

LENOX 175 RESTAURANT LLC,                          Chapter 11
                                                    Case No. 17-11344 (MEW)
                                          Debtor.
-----------------------------------------------------------------X

### ORDER SCHEDULING A HEARING ON SHORTENED
### NOTICE ON THE DEBTOR'S MOTION
### SEEKING AUTHRORITY TO SELL ITS
### NONRESIDENTIAL REAL PROPERTY LEASE

   **UPON** the Motion of the above-captioned debtor and debtor-in-possession (the

"Debtor"), by its attorneys, Rattet PLLC, and its request for an Order scheduling hearing on

shortened notice, and sufficient cause appearing therefore, it is hereby

   **ORDERED**, that a hearing (the " Hearing") shall be held before the Honorable Miehael

E. Wiles, United States Bankruptcy Judge, on November __, 2017 at 10:00 a.m., or as soon

thereafter as counsel may be heard, at the United States Bankruptcy Court, One Bowling Green,

New York, New York on the Debtor's Motion Seeking Entry Of: (I) Sale Procedures Order (A)

Approving Bidding Procedures, (B) Approving the Form and Manner of Notice, and (C)

Scheduling an Auction and Sale Hearing; (II) Sale Approval Order (A) Authorizing Assumption

and Assignment of the Debtor's Nonresidential Real Property Lease; (B) Authorizing The Sale

of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and

Encumbrances, (C) Granting the Successful Bidder Good Faith Status, (D) Waiving the Fourteen

Day Stay of Sale Order, And (E) Granting Related Relief; and such other and further relief as is

just and proper under the circumstances (the "Sale Motion"); and it is further

   **ORDERED**, that a copy of this Order scheduling hearing and the Sale Motion shall be

served upon (a) the United States Trustee; (b) the Debtor's secured creditors, or their counsel; (c) counsel to the Debtor's landlord and other parties to any executory contracts; and (d) the Debtor's twenty (20) largest unsecured creditors by facsimile, electronic mail, or overnight delivery on or before November __, 2017, which shall be deemed good and sufficient service hereof; and it is further

**ORDERED,** that objections to the relief requested in the Sale Motion may be in writing, stating with specificity the basis or bases on which such party in interest objects to the motion, filed with the Bankruptcy Court at the address stated above (with a copy to Chambers) and must be served upon Debtor's counsel so as to be received at least one (1) day before the Hearing.

Dated:  New York, New York
        November __, 2017

_____
HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## NOTICE

61.     Notice of this Motion has been provided to (i) the Office of the U.S. Trustee, (ii) all taxing authorities, (iii) counsel to the Purchaser, and (iv) parties who have filed notices of appearance. The Debtor submits that said notice is adequate and proper.

## NO PRIOR REQUEST

62.     No prior Motion for the relief requested herein has been made to this or any other Court.

## CONCLUSION

63.     For all of the foregoing reasons, the Debtor respectfully request entry of the Sale Procedures Order and after the Auction and a Sale Hearing, entry of the Sale Approval Order.

**WHEREFORE,** the Debtor respectfully request that the Court grant the relief requested herein, together with such other and further relief as is just and proper under the circumstances.

Dated:  White Plains, New York
          November 6, 2017

                                            RATTET PLLC
                                            Attorneys for the Debtor
                                            202 Mamaroneck Avenue
                                            White Plains, New York 10601
                                            (914) 381-7400

                                            By:     *Robert L. Rattet*
                                                     Robert L. Rattet, Esq.